IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **TONYA RENAE STEVENS,** | ) | |
| Plaintiff, | ) | Civil Action No. 1:07cv00086 |
| | ) | |
| v. | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| **UNION SECURITY** | ) | |
| **INSURANCE COMPANY,** | ) | By: PAMELA MEADE SARGENT |
| Defendant. | ) | UNITED STATES MAGISTRATE JUDGE |
| | ) | |

*I. Background and Standard of Review*

Plaintiff, Tonya Renae Stevens, filed this action challenging the final decision of Union Security Insurance Company, ("Union Security"), denying Stevens's claim as a beneficiary for accidental death and dismemberment and automobile accident benefits, under a group policy, ("the Policy"), issued to the employees of United Coal Company, ("United Coal"). This cause of action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001 *et seq.* (West 1999 & Supp. 2007) ("ERISA"). Jurisdiction of this court exists pursuant to 29 U.S.C.A. §§ 1132(e) and (f) (West 1999). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

Tonya Stevens's husband, Mitchell Stevens, died as the result of a motor vehicle accident on September 2, 2006. (Record, ("R."), at US94.) On or about November 2, 2006, Tonya Stevens was approved, as a beneficiary, to receive basic

-1-

life insurance benefits under the Policy with an effective date of October 30, 2006, based on a claim that her husband's life was insured and she was the named beneficiary. (R. at US128, US130.) On March 14, 2007, Tonya Stevens's claim for accidental death and automobile accident benefits was determined not payable based on provisions of the Policy. (R. at US123-US125.) Tonya Stevens was informed of the relevant policy provisions, reasons why the benefits were denied and was given an explanation of appeal procedures. (R. at US123-US124.) There is no evidence before the court that Tonya Stevens exhausted her appeals. She then filed a complaint in the Circuit Court of Buchanan County on October 29, 2007. (Docket Item No. 1, Exhibit A.) On November 19, 2007, the case was removed to this court pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 1132(e) and 28 U.S.C. § 1441(a), (b) and (c). (Docket Item No. 1.)

This case is now before the court on cross motions for summary judgment.[1] (Docket Item Nos. 13, 14.) Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). Where the court must decide the case on the basis of an administrative record, the summary judgment motion "stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review." *Krichbaum v. Kelley*, 844 F. Supp. 1107, 1110 (W.D. Va. 1994). The parties in this case have raised no genuine issues of material fact[2] and have submitted an administrative record for the court's review.

---

[1] Pursuant to the Scheduling Order entered by this court on December 4, 2007, all parties are deemed to have moved for summary judgment in their respective favor based on the administrative record. (Docket Item No. 9.)

[2] While the plaintiff denies that the decedent's blood alcohol level was 0.227 at the time of the accident, this mere denial is not supported by any probative evidence. By its very terms, the standard for summary judgment "provides that the mere existence of *some* alleged factual dispute

-2-

Therefore, the case appears ripe for decision under Federal Rule of Civil Procedure 56(c).

## *II. Facts*

The plaintiff's decedent, Mitchell Stevens, worked as a shuttle car operator for United Coal. (R. at US91, US95.) On October 1, 2004, Union Security issued Policy No. G4047889, insuring the life of Mitchell Stevens. (R. at US9-US36.) Under Policy No. G4047889, Mitchell Stevens possessed basic life insurance underwritten by Union Security for an amount equal to $50,000.00 and possessed accidental death insurance underwritten by Union Security for an amount equal to $50,000.00, both through a group employee benefit plan provided by United Coal. (R. at US106-US107.) Mitchell Stevens also possessed an automobile accident benefits policy underwritten by Union Security. (R. at US123.) Tonya Stevens was listed as Mitchell Stevens's named beneficiary for all insurance provided through United Coal and underwritten by Union Security. (R. at US95.)

On September 2, 2006, Mitchell Stevens died as the result of a car accident. (R. at US94.) A Police Crash Report, ("Report"), on that date indicated that at approximately 7:10 A.M. on September 2, 2006, Mitchell Stevens was driving a vehicle at a rate of 60 miles per hour, ("mph"), in a westerly direction on Route 83 in Buchanan County, Virginia, on an area of the road where the posted speed limit

---

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. The plaintiff's mere denial of the decedent's blood alcohol level accompanied by a lack of any probative evidence does not create a genuine issue, as there is substantial evidence in the record to uphold the defendant's denial of benefits.

-3-

was 55 mph. (R. at US87.) The Report indicated that Mitchell Stevens's vehicle "ran off road right, struck tree, ran off road left then overturned off road right." (R. at US87.) The Report also noted that there were no defects in the roadway, that no safety restraint was being used at the time of the accident, that Stevens was partially ejected from the vehicle, that Stevens was dead before the Report was made, the vehicle had no defects, that Stevens had been drinking, but that it was unknown whether he was impaired, and further, that he failed to maintain proper control of the vehicle. (R. at US85, US87.)

Mitchell Stevens's Certificate Of Death, issued by the Department of Health of the Commonwealth of Virginia, reported his cause of death as "multiple head and internal trauma" as a consequence of a motor vehicle accident. (R. at US94.) A sample of Stevens's blood was collected at Buchanan General Hospital at 10:13 A.M., which later revealed an Ethanol level of 0.227% after being verified by repeat analysis. (R. at US49-US50.)

Tonya Stevens filed a claim for life insurance benefits and accidental death and automobile accident benefits on September 15, 2006. (R. at US91-US92.) On or about November 2, 2006, Tonya Stevens was approved, as a beneficiary, to receive basic life insurance benefits under the Policy with an effective date of October 30, 2006, based on a claim that her husband's life was insured and she was the named beneficiary. (R. at US128, US130.) On November 2, 2006, Assurant Employee Benefits, ("Assurant"), a provider of services underwritten and/or provided by Union Security, sent Tonya Stevens a check in the amount of $42,640.15, which included $19.65 in interest accrued on Mitchell Stevens's policy. (R. at US88.) Assurant also sent Shortridge-Ramey Funeral Home a check

in the amount of $7,379.50, the amount of benefits assigned for Mitchell Stevens's funeral expenses. (R. at US89, US96.)

On March 5, 2007, in order to determine Tonya Stevens's eligibility for accidental death and automobile accident benefits, Erica Liggins, of Assurant, sent Dr. Allen J. Parmet, M.D., a memorandum requesting that he opine whether "the amount of Ethanol in Mr. Stevens's system [would] have impaired his judg[]ment in operating a motor vehicle[.]" (R. at US48.)

In a March 10, 2007, reply letter to Erica Liggins, Dr. Parmet noted that:

> At the time of death, Mr. Stevens'[s] blood alcohol level was 0.227%, more than three times the legal level for operating a motor vehicle in the Commonwealth of Virginia. At this level he would have been severely impaired in cognition and reaction and would have been unable to properly and safely operate a motor vehicle.

(R. at US47.) Dr. Parmet concluded that Mitchell Stevens's death was "due to [a] motor vehicle accident induced trauma," and that the accident was "precipitated by alcohol intoxication." (R. at US47.)

On March 14, 2007, Erica Liggins sent Tonya Stevens a letter stating that she "ha[d] determined that Accidental Death and Automobile Accident Benefits [were] not payable based on policy provisions." (R. at US123-US125.) The letter included the relevant policy provisions, reasons why the benefits were denied and an explanation of appeal procedures. (R. at US123-US124.) Underneath the heading, "Why Claim Was Denied," Liggins noted that:

-5-

> You provided me with a copy of the Buchanan General Hospital, toxicology report. The report indicates that Mitchell's blood alcohol level was 0.227%. The legal limit in Virginia is 0.08%. Therefore, your husband was intoxicated at the time of death . . . [T]he Commonwealth of Virginia Police Crash Report . . . indicates the Driver Action – fail to maintain proper control.
>
> . . . According to Dr. Parmet, at a blood alcohol level of .227%, your husband would have been severely impaired in cognition and reaction . . .
>
> Based on all the evidence on file, I have concluded that your husband's accident and death resulted directly or indirectly from his intoxication. Accordingly, the exclusion for intoxication quoted above is applicable and no accidental death or automobile accident benefits are payable.

(R. at US124.)

Also, underneath the heading, "Appeal Procedures," the letter stated that:

> Enclosed please find a copy of the Group Claim Denial Review Procedure. This document describes the plan's review procedures, including your rights with respect to our administrative appeals process, and also describes your right to bring a lawsuit under Section 502(a) of [ERISA], if your claim is governed by this act.
>
> If you disagree with our decision and wish to request a review, please submit a written statement indicating why you believe our decision is incorrect. Along with your request, please provide us with information that supports ... your decision.

(R. at US124.)

The Policy in this case expressly vests Union Security with "discretionary" authority both to determine eligibility for benefits and to interpret the terms of the

-6-

Policy. The Policy states that "[t]he *policyholder* delegates to [Union Security] and agrees that [Union Security has] the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the *policy*. All determinations and interpretations made by [Union Security] are conclusive and binding on all parties." (R. at US31.)

The Policy also states that, "[i]f you die as the direct result of an *injury*[,] we will pay your *beneficiary* the amount of Accidental Death and Dismemberment Insurance shown in the Schedule." (R. at US25.) However, on a page entitled, "Summary Of Group Insurance" and underneath the heading, "Accidental Death and Dismemberment Insurance," the Policy specifically notes that "[t]here are losses not covered by the *policy*. Please see the Exclusions provision." (R. at US16.) On a page entitled, "Accidental Death And Dismemberment Insurance For You," and underneath the heading, "Exclusions," the Policy states that, Union Security "will not pay benefits if the loss results directly or indirectly from . . . your intoxication, unless the intoxicant is administered on the advice of a *doctor*; this includes but is not limited to operating a motor vehicle while you are intoxicated." (R. at US25-US26.)

The Policy defines "intoxication" and "intoxicated" to "mean your blood alcohol level at death or dismemberment exceeds the legal limit for operating a motor vehicle in the jurisdiction in which the loss occurs." (R. at US26.) The Policy also states that, "[i]f you die as the direct result of an automobile accident *injury* while you are properly wearing an unaltered seat belt installed by the automobile's manufacturer, we will pay your *beneficiary* the amount of the Automobile Accident Benefit, which is shown in the Schedule." (R. at US27.) The policy further states, however, "[t]he Exclusions listed under the Accidental

-7-

Death and Dismemberment Insurance Coverage for You will also apply to the Automobile Accident Benefit."  (R. at US27.)

*III. Analysis*

Tonya Stevens claims that there are numerous factual disputes, and that the court should not dismiss her claim without the benefit of an evidentiary hearing. Union Security argues that its claim decision was reasonable and based on substantial evidence.  Union Security further argues that Tonya Stevens failed to exhaust her administrative remedies as required under ERISA.

The Policy at issue in this case, G4047889, with an effective date of October 1, 2004, expressly vests Union Security with "discretionary" authority both to determine eligibility for benefits and to interpret the terms of the Policy. Specifically, the Policy states that "[t]he *policyholder* delegates to [Union Security] and agrees that [Union Security has] the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the *policy*.  All determinations and interpretations made by [Union Security] are conclusive and binding on all parties."  (R. at US31.)

In cases such as this, where the benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility or to construe the terms of the plan, a denial decision must be reviewed for abuse of discretion. *See Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997); *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997).  A series of factors must be considered in determining whether an administrator or fiduciary has abused its discretion, including: (1) the scope of discretion conferred; (2) the purpose of the plan

provision in which discretion is granted; (3) any external standard relevant to the exercise of that discretion; (4) the administrator's motives; and (5) any conflict of interest under which the administrator operates in making its decision. *See Haley v. Paul Revere Life Ins. Co*., 77 F.3d 84, 89 (4th Cir. 1996) (citing RESTATEMENT (SECOND) OF TRUSTS § 187 cmt. d (1957)). Under the abuse of discretion standard, if the administrator's decision is supported by substantial evidence and is in accordance with the law and the language of the plan, the decision must be sustained, even if the court believes that substantial evidence also supports a contrary result. *See Sargent v. Holland,* 925 F. Supp. 1155, 1159 (S.D. W.Va. 1996); *see Lockhart v. UMWA 1974 Pension Trust*, 5 F.3d 74, 78 (4th Cir. 1993).

Because an ERISA plan is contractual in nature, courts use standard contract principles and look to the plan's language to determine whether the plan confers discretion on the administrator to provide benefits and also to determine the scope of that discretion. *See Haley*, 77 F.3d at 88. "When the administrator's exercise of a discretionary power forms the basis of a dispute between the parties, courts do not review the merits of the administrator's decision, but rather decide only the contractual questions of whether the administrator exceeded its power or abused its discretion because only those inquiries are relevant to whether the administrator's decision breached the contractual provision." *Haley*, 77 F.3d at 88. Moreover, under the abuse of discretion standard, the plan administrator's decision is reasonable "'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995) (quoting *Baker v. United Mine Workers of Am. Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

Nonetheless, in cases such as this, where a benefit plan acts as both fiduciary of the plan's beneficiaries and the plan's insurer, the Fourth Circuit has held that a court must use a "sliding scale abuse of discretion standard," reducing the deference given to the fiduciary to the degree necessary to neutralize any influence resulting from the conflict. *See Ellis,* 126 F.3d at 233; *Bedrick v. Travelers Ins. Co.*, 93 F.3d 149, 152 (4th Cir. 1996); *Hickey v. Digital Equip. Corp.*, 43 F.3d 941, 946-47 (4th Cir. 1995). "The more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." *Ellis*, 126 F.3d. at 233. Because Union Security serves as both fiduciary and insurer of the Policy at issue, the court must view Union Security's actions in light of this conflict and adjust the amount of deference given to Union Security's decision accordingly. *See Ellis*, 126 F.3d at 233; *Bedrick*, 93 F.3d at 152.

Based on my review of Union Security's claim file, I find that the undisputed evidence shows that Union Security's decision to deny benefits is supported by substantial evidence, and the decision was in accordance with the law and language of the Policy. That being the case, I recommend that the court find that Union Security did not abuse its discretion by denying benefits to Stevens, and that, therefore, the court should affirm Union Security's decision.

As noted above, the Policy expressly vests Union Security with "discretionary" authority both to determine eligibility for benefits and to interpret the terms of the Policy. (R. at US31.) The Policy also makes clear that "[t]here are losses not covered by the *policy*." (R. at US16.) Further, the Policy states that Union Security "will not pay benefits if the loss results directly or indirectly from .

-10-

. . your intoxication . . ." (R. at US25-US26.) The policy defines "intoxication" and "intoxicated" to "mean your blood alcohol level at death or dismemberment exceeds the legal limit for operating a motor vehicle in the jurisdiction in which the loss occurs." (R. at US26.) The Policy further states that, "[t]he Exclusions listed under the Accidental Death and Dismemberment Insurance Coverage for You will also apply to the Automobile Accident Benefit." (R. at US27.)

In determining whether Tonya Stevens was eligible for benefits under the Policy, Erica Liggins sent Dr. Parmet a memorandum requesting that he opine whether "the amount of Ethanol in Mr. Stevens's system [would] have impaired his judg[]ment in operating a motor vehicle[.]" (R. at US48.) In Dr. Parmet's reply, he noted that at the time of Stevens's accident, Stevens's blood alcohol level was more than three times the legal limit in the Commonwealth of Virginia of .08 by weight by volume.[3] (R. at US47.) Dr. Parmet determined that, at this level, Mitchell Stevens would have been severely impaired in cognition and reaction and would have been unable to properly and safely operate a motor vehicle. (R. at US47.) Dr. Parmet concluded that Stevens's death was "due to [a] motor vehicle accident induced trauma," and that the accident was "precipitated by alcohol intoxication." (R. at US47.)

Dr. Parmet based his decision in part on laboratory tests of Stevens's blood, which were taken at Buchanan General Hospital at 10:13 A.M. on September 2, 2006, and revealed that Stevens had an Ethanol level of 0.227%, which was verified by repeat analysis. (R. at US49-US50.) It is undisputed that Mitchell Stevens died as a result of a car accident that took place on September 2, 2006, and

---

[3] *See* VA. CODE ANN. § 18.2-266 (2004 & Supp. 2007).

-11-

Mitchell Stevens's Certificate Of Death, issued by the Department of Health of the Commonwealth of Virginia, reported his cause of death as "multiple head and internal trauma" as a consequence of a motor vehicle accident. (R. at US94.)

As indicated by the letter sent by Erica Liggins to Tonya Stevens, benefits were denied based on the Buchanan General Hospital toxicology report, the Commonwealth of Virginia Police Crash Report and Dr. Parmet's opinion that Stevens was severely impaired in cognition and reaction due to intoxication at the time of his accident and subsequent death. (R. at US123-US124.) The conclusion by Union Security that Steven's accident and death resulted directly or indirectly from his intoxication and that the Policy excludes accidental death or automobile accident benefits if death occurs as a result of intoxication, is supported by substantial evidence. Based on the evidence of record, therefore, I find that the plan administrator's decision is reasonable and is the result of a deliberate, principled reasoning process. *See Bernstein*, 70 F.3d at 788 (quoting *Baker*, 929 F.2d at 1144).

Thus, I find that substantial evidence supports a finding that Union Security did not abuse its discretion in denying benefits. Because I find that substantial evidence supports Union Security's decision to deny benefits, I will not address whether Tonya Stevens failed to exhaust her administrative remedies under the Policy.[4] For all of the foregoing reasons, I recommend that the court deny Tonya Steven's motion for summary judgment and grant summary judgment in favor of Union Security.

---

[4] Further, there is insufficient evidence in the record for the court to make a finding on this matter.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in this record to support Union Security's decision that Mitchell Stevens was intoxicated at the time of the automobile accident resulting in his death; and

2. Union Security's decision to deny accidental death and automobile accident benefits to Tonya Stevens was not an abuse of discretion.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Tonya Stevens's motion for summary judgment, grant Union Security's motion for summary judgment and affirm Union Security's decision to deny benefits to Tonya Stevens.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]. The judge may also receive further evidence or recommit the matter to the magistrate [judge] with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 9th day of May 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE